UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROMAN CAMACHO MARTINEZ, | ) | 1:09-CV-01291 AWI JMD HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATIONS |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| WARDEN, AVENAL STATE PRISON, | ) | |
| | ) | OBJECTIONS DUE WITHIN THIRTY (30) |
| Respondent. | ) | DAYS |
| | ) | |

Roman Camacho Martinez (hereinafter "Petitioner") is a prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a 1985 conviction for second degree murder. The trial court sentenced Petitioner to a prison term of sixteen years to life. Petitioner's current petition for writ of habeas corpus does not involve his conviction; rather, the instant petition challenges the decision by the California Board of Parole Hearings (the "Board") to deny Petitioner parole. Petitioner appeared before the Board on April 22, 2008.

On November 17, 2008, Petitioner filed a petition for writ of habeas corpus with the Los Angeles County Superior Court challenging the Board's decision. (*See* Resp't Answer Ex. 1.) The Superior Court issued a reasoned opinion denying the petition on January 21, 2009. (*See* Resp't Answer Ex. 2.)

Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal and the California Supreme Court. (Resp't Answer Exs. 3, 5.) The California Court of Appeal

denied the petition with a citation to *In re Lawrence*, 44 Cal. 4th 1181, 1212, 1228 (2008) and *In re Shaputis*, 44 Cal. 4th 1241, 1254-61 (2008). (Resp't Answer Ex. 4.) The California Supreme Court issued a summary denial of the petition. (*See* Resp't Answer Ex. 6.)

On July 24, 2009, Petitioner filed the instant federal petition for writ of habeas corpus. Respondent filed a response to the petition on January 11, 2010, to which Petitioner filed a traverse on February 1, 2010.

## FACTUAL BACKGROUND

Petitioner was convicted of second degree murder stemming from the stabbing of a rival gang member, John Ruiz. The facts, as summarized by the Los Angeles Superior Court, were that:

> The record reflects that the commitment offense occurred on November 14, 1984. Petitioner has his friends, who were all gang members, were walking to a store when they encountered the victim and two companions, whom they believed to be members of a rival gang. One of the victims lived next door to the store. When they arrived at the store, the victim's female companion went to the pay phone near where petitioner was standing. Petitioner claims that he believed that she was trying to call other gang members to fight. He told her to hang up the phone and then attempted to grab it from her hands. She hung up and went into the house next door. According to court testimony, she told the men with her that petitioner had threatened her with a knife. One of the men came out of the house confront petitioner. They began fighting. Petitioner's friends came to his aid so the victim fled to his house next door. Petitioner believed the man went inside to get a weapon, so he armed himself with two bottles he found in the ally behind the store. When the victims came out of the house again, petitioner threw the bottles at them. Petitioner friends join in the fight and began beating and kicking the victim. According to the witness, petitioner stabbed the victim, which resulted in his death. Petitioner admits throwing the bottles and kicking the victim, but denies the stabbing.

(Resp't Answer Ex. 2 at 1.)[1]

Petitioner's account of the events is consistent with the facts as stated by the Los Angeles Superior Court. (Tr. Parole Hearing at 11-16.) However, Petitioner denies stabbing Ruiz, claiming that one of his friends stabbed Ruiz with a buck knife. (Id. at 16.)

\\\
\\\
\\\

---

[1] Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir. 2009).

**DISCUSSION**

**I.     Jurisdiction**

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. Petitioner is currently incarcerated at Avenal State Prison, which is located in Kings County. As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

**II.    AEDPA Standard of Review**

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of AEDPA and is consequently governed by its provisions. *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)), *overruled in part on other grounds*, *Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. *See Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) *overruled in part on other grounds*, *Hayward*, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes

'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id*. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents."); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer

1 reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on
2 a federal Constitutional issue....This does not mean that Ninth Circuit caselaw is never relevant to a
3 habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining
4 whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and
5 also may help us determine what law is 'clearly established.'"). Furthermore, the AEDPA requires
6 that the Court give considerable deference to state court decisions. The state court's factual findings
7 are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is bound by a state's
8 interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the Los Angeles County Superior Court, the California Court of Appeal, and the California Supreme Court reached the merits of Petitioner's claims. The California Supreme Court's decision was a summary denial. As the California Court of Appeal's decision merely cited to *In re Lawrence* and *In re Shaputis* in denying the petition, the Court finds the state appellate court's decision to be an ambiguous state court decision. Thus, the Court looks through the decisions by the California Supreme Court and the California Court of Appeal to the last reasoned decision; namely, that of the Los Angeles County Superior Court. *See Nunnemaker*, 501 U.S. at 804.

### III. Review of Petitioner's Claims

The petition for writ of habeas corpus sets forth three ground for relief. In his first ground for relief, Petitioner contends that there was no evidence to support the Board's finding that Petitioner posed an unreasonable risk of danger to the public safety. Petitioner's second ground for relief contends that the Board failed to give him individualized consideration, thereby depriving Petitioner

1  of his right to due process of the law.  Lastly, Petitioner contends that the Board's reliance on
2  immutable factors to deny him parole violated his constitutional rights.   As all three claims center on
3  the same issue, whether Petitioner's due process rights were violated by the denial of parole, the
4  Court addresses these claims in the same section.

5        The Court analyzes Petitioner's due process claims in two steps: "the first asks whether there
6  exists a liberty or property interest which has been interfered with by the State; the second examines
7  whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461
8  F.3d at 1127 (quoting *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989),
9  *partially overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)).  The United States
10 Constitution does not, by itself, create a protected liberty interest in a parole date.  *Jago v. Van*
11 *Curen*, 454 U.S. 14, 17-21 (1981).  Respondent argues that Petitioner does not have a federally
12 protected liberty interest in parole.  (Resp't Answer at 3.)  Respondent further contends that even if
13 Petitioner has a liberty interest in parole that is protect by federal law, he was provided all the
14 protections required under *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. at, 16
15 (1979).  (Id.)

16       The Ninth Circuit Court of Appeals has recognized that "[i]f there is any right to be release
17 on parole, or to release in the absence of some evidence of future dangerousness, it has to arise from
18 substantive state law creating a right to release."  *Hayward*, 603 F.3d at 555.  The Ninth Circuit
19 further recognized that "[t]here is no general federal constitutional 'some evidence' requirement for
20 denial of parole, in the absence of state law creating an enforceable right to parole."  *Id*. at 559.  The
21 *Hayward* court's finding, that there exists no free standing federal due process right to parole or the
22 federal right to some evidence of current dangerousness, contained the consistent and continual
23 caveat that state law may in fact give rise to federal protection for those rights.  As the Ninth Circuit
24 later reiterated, "state created rights may give rise to liberty interests that may be enforced as a matter
25 of federal law."  *Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam) (citing *Wilkinson*
26 *v. Austin*, 545 U.S. 209, 221 (2005)).   The *Pearson* court found that, "*Hayward* necessarily held that
27 compliance with state requirement is mandated by federal law, specifically the Due Process Clause"
28 as "[t]he principle that state law gives rise to liberty interests that may be enforced as a matter of

federal law is long-established." *Id.*

The next question is whether California's parole scheme gives rise to a liberty interest enforced as a matter of federal law. The Ninth Circuit has definitively concluded that "California has created a parole system that independently requires the enforcement of certain procedural and substantive rights, including the right to parole absent 'some evidence' of current dangerousness." *Id.* at 611 (citing *Hayward*, 603 F.3d at 562); *see also Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010) (noting that "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of that state."). Consequently, the inquiry that a federal habeas court must undertake in determining whether the denial of parole comports with the requirement of federal due process is "whether the California judicial decision approving the governor's [or parole board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 563 (quoting 28 U.S.C. § 2254(d)(1)-(2)) (footnotes omitted).

The Court now examines whether the Los Angeles County Superior Court's decision was an unreasonable application of the California some evidence standard. The Superior Court found that the Board's decision was based on several factors, including the commitment offense and Petitioner's disciplinary record, and that some evidence supported the Board's decision to deny parole. (Resp't Answer Ex. 2 at 2-3.) The Superior Court articulated two reasons why the commitment offense was probative of current dangerousness. First, the State court observed that "[i]n some cases, 'the nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole.'" (Id. at 2) (quoting *In re Lawrence*, 44 Cal. 4th at 1207. The Superior Court proceeded to discuss the heinous nature of the commitment offense, finding that the offense was committed in a more aggravated and violent fashion than ordinarily shown. Alternatively, the Superior Court concluded that the commitment offense was rendered probative towards current dangerousness by Petitioner's prison disciplinary record.

\\\

\\\

\\\

The Court initially notes that the Los Angeles County Superior Court applied the correct standard of review in focusing on whether there was evidence of current dangerousness. The California Supreme Court held in *Lawrence* that, "[t]he relevant determination for the Board and the Governor is, and always has been, an individualized assessment of the continuing danger and risk to public safety posed by the inmate."[2] *In re Lawrence*, 44 Cal. 4th. at 1227 (noting that "mere recitation of the circumstances of the commitment offense, absent articulation of a rational nexus between those facts and current dangerousness, fails to provide the required "modicum of evidence" of unsuitability."). The Ninth Circuit reiterated this principle, stating that "a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" *Cooke*, 606 F.3d at 1214 (emphasis in original) (quoting *In re Lawrence*, 44 Cal. 4th at 1221). As the Ninth Circuit observed in *Cooke*:

> Under California law, "the paramount consideration for both the Board and the Governor" must be "whether the inmate currently poses a threat to public safety and thus may not be released on parole,"[citation], and "the facts relied upon by the Board or the Governor [must] support the ultimate decision that the inmate remains a threat to public safety.

*Id*. (quoting *In re Lawrence*, 44 Cal. 4th at 1210, 1213); *see also* Cal. Code Regs. tit. 15, § 2402(a) ("[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole).

In relying on the commitment offense as evidence of current dangerousness, the Los Angeles Superior Court applied the California Supreme Court's holding in *Lawrence* "that certain conviction offenses may be so 'heinous, atrocious or cruel' that an inmate's due process rights would not be violated if he or she were to be denied parole on the basis that the gravity of the conviction offense establishes current dangerousness." *Id*. at 1227. The Superior Court's reliance on this portion of

---

[2] Petitioner contends that he was deprived of an individualized consideration by the Board, faulting the Board for not giving due consideration to his age at the time of offense, his discipline free record, and personal gains in prison. Petitioner further contends that the Board failed to consider the period of stress he was under. The Court notes that this factor was not mentioned by Petitioner at the hearing. Furthermore, the Court finds that this contention is not supported by the record as the Board discussed Petitioner's post-incarceration gains, including his discipline record (Tr. Parol Hearing at 26-27), his vocational upgrades (Tr. Parole Hearing at 27-28) and his participation in self-help programs (Tr. Parole Hearing at 30-33). In sum, there is no evidence, the Board failed to give Petitioner individualized consideration.

*Lawrence* is objectively unreasonable as the *Lawrence* court noted that this holding only applies to rare instances. *See In re Lawrence*, 44 Cal. 4th at 1211 ("the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole when there is strong evidence of rehabilitation and no other evidence of current dangerousness."). The Superior Court's discussion of the nature of Petitioner's commitment offense illustrates that this is not one of those instances where the commitment offense by itself could constitute some evidence of current dangerousness. As noted by the state court's summary of the facts, the commitment offense began as a fight between two groups belonging to rival gangs. The victim was physically beaten and then stabbed during this fight. The Court does not find that these circumstances to be so heinous, atrocious or cruel such that the remoteness of time is unable render the crime less predictive of current dangerousness. *See In re Rozzo*, 172 Cal. App. 4th 40, 59 (2009). Such a finding would lead to almost every commitment offense being probative of current dangerousness and would render meaningless the rest of the California Supreme Court's holding in *Lawrence*. Thus, the Court finds the Superior Court's findings to be an unreasonable application of *Lawrence*.

However, the Superior Court also found that the commitment offense was rendered probative by Petitioner's disciplinary infractions. The Superior Court stated that:

> the relevant inquiry is not simple whether the crime was especially heinous, but whether the heinousness of the crime indicates that petitioner continues to pose an unreasonable risk fo danger to society. (*In re Shaputis* (2008) 44 Cal. 4th 1241, 1254.) There must also be a 'rational nexus' between the heinousness of the commitment offense and the inmate's current risk of danger. (*Lawrence*, supra, 44 Cal 4th at 1213.) There is some evidence that petitioner is an unreasonable risk of danger to society due to his serious misconduct while in prison. (Cal. Code Regs., tit. 15, § 2402, sub. (c)(6).) Although petitioner has not had any CDC 115s since 1994, he has been disciplined for violent behavior in the past, including the stabbing of an inmate, force and violence, and weapons possession. The stabbing incident is significant given the fact that his original crime was also a stabbing.

(Resp't Answer Ex. 2 at 2.)

The Court notes that the disciplinary infractions on which the Superior Court rely on are at least fourteen years old. While the Ninth Circuit found that disciplinary infractions occurring a decade earlier were not evidence of current dangerousness, *Cooke v. Solis*, 606 F.3d at 1215, the Court finds this situation distinct from *Cooke*. Unlike *Cooke*, the disciplinary infractions here are not minor as they involve CDC 115s. *In re Gray*, 151 Cal.App.4th 379, 389 (2007) (noting that

CDC 115 documents misconduct believed to be a violation of law or otherwise not minor in nature); Cal. Code Regs. tit. 15, § 3312(a)(3). California regulations specifically mandate consideration of serious disciplinary infractions as a circumstance tending to show unsuitability for release. Cal. Code Regs. tit. 15, § 2402(c)(6). Additionally, the use of disciplinary infractions here is distinct from that disapproved of by the Ninth Circuit in *Cooke*. In *Cooke*, the disciplinary infraction was itself considered as evidence of current dangerousness by the Board. Here, the Superior Court found that the disciplinary infraction rendered the commitment offense probative towards current dangerousness. This approach is consistent with the holding of the *Lawrence* court, which stated:

> [W]e conclude that although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public *unless the record also establishes that something in the prisoner's pre- or post-incarceration history*, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

*In re Lawrence*, 44 Cal. 4th at 1214 (emphasis added).

Thus, the Court does not find the Superior Court's decision to be an objectively unreasonable application of the California some evidence standard. As the Superior Court's decision was not objectively unreasonable, Petitioner is not entitled to habeas corpus relief.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections.

The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 16, 2010**                                    **/s/ John M. Dixon**
                                                                                UNITED STATES MAGISTRATE JUDGE